## Leedom Estate

*Roberts & Pitt,* for accountant.

*Donald E. Hogeland,* guardian, p. p.

SATTERTHWAITE, P. J., August 22, 1966.—The final account of Donald E. Hogeland, substituted guardian of the estate of said incompetent, was presented to the court for audit, confirmation and distribution of ascertained balances on August 1, 1966, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record. The accounting was occasioned by the death of incompetent on January 11, 1966, and the situation is complicated by the fact that no personal representative has or will qualify in her decedent's estate.

The within account has been examined and audited by the court. The total balance for distribution shown thereby was $8,755.65, but only $871.20 in cash thereof is properly attributable to the within guardianship of incompetent's estate. The difference, $7,884.45, repre-

sents the balance in accountant's hands, not as guardian of incompetent's estate, but as trustee under the will of Percy E. Leedom, incompetent's predeceased husband, pursuant to which the fiduciary had the discretionary power to apply both income and principal as deemed necessary for the maintenance, support, medical care and expenses of said Helena M. Leedom, within incompetent, and, upon her death, to divide the remaining funds equally among her four [named] children, who in fact are her sole next of kin and, hence, are entitled to the balance of her own individual estate, since, as appears by affidavit filed herewith, she died intestate.

Fortunately, the accounting is so presented in form that that pertaining to the Percy E. Leedom trust estate may be eliminated, and such aspect thereof is, accordingly, hereby removed from further consideration and will be disregarded as surplusage. Accountant's responsibility for that trust estate would seem to be a matter solely between himself and the children-remaindermen, whom he apparently has satisfied, since he has filed releases from each of them for the whole of the amounts due under both the trust and the guardianship estates; he indicates his belief that there neither are nor could be any unpaid creditors. In any event, his accountability under the Percy E. Leedom will is entirely independent of, and has no presently material relationship to, either his fiduciary responsibility or his potential liability on his bond as court-appointed substituted guardian of incompetent's own estate. Compare Bernhard Estate, 13 Fiduc. Rep. 251.

The presently relevant stated balance in the guardianship account of $871.20, although correctly computed as a matter of arithmetic, must be adjusted herein for present purposes. In the first place, it must be increased by $785.05, the amount of incompetent's funeral bill, which was a non-administration ex-

pense paid by the guardian and claimed as a credit in the account since incompetent's death. This payment was unauthorized insofar as the guardian was concerned: Section 613 of the Incompetents' Estates Act of February 28, 1956, P. L. 1154, as amended, 50 PS §3613; Goldstein Estate, 21 D. & C. 2d 59. Since no challenge has been made thereto, however, it will be regarded as a proper preaudit "at risk" distribution, the award of which will be hereinafter ratified.

Secondly, accountant submitted to be debited with $176.80 in additional receipts since the closing date of the accounting. Of this, $147.32 represents additional interest credited to a bank savings account, and $29.48 represents a refund of an amount previously withheld because of the possibility of inheritance tax liabilities (now apparently discharged) as related to certain industrial death benefits due incompetent by reason of the death of her husband.

Thirdly, accountant requested and is hereby allowed additional credit in the amount of $1 as additional costs paid in connection with the within audit since the closing date of the accounting. His further request for credit for an additional post-accounting payment of $17.42 for Pennsylvania transfer inheritance tax must be refused under section 613, supra; however, this item will likewise be taken into account in the awards hereinafter made as a "risk" distribution.

By reason of the foregoing adjustments, the net ascertained balance for distribution in the guardianship account is hereby fixed at $1,832.05.

The only question for adjudication is the manner of disposition of this balance. Accountant asks that the court award the balance of all funds accounted for, both those attributable to the guardianship, as well as those constituting the balance of the trust account, directly to the next of kin of the deceased incompetent, without the intervention of a personal representative

of her decedent's estate, under the authority of Tarbotton Estate, 4 Fiduc. Rep. 328. This the court refused to do. The propriety of such an award as to the trust estate is not before the court and cannot be determined herein. Moreover, the court takes this opportunity to express disapproval of the practice availed of in the Tarbotton Estate decision. No occasion can now be presented for the informal procedures there sanctioned, since section 631(b) of the Incompetents' Estates Act of 1955, 50 PS §3631(b), enacted since Tarbotton, accomplishes the same practical avoidance of the expense and inconvenience of filing and advertising formal and unnecessarily duplicated accountings as both guardian and personal representative in the case of a deceased incompetent, while at the time better protecting possible creditors or other third parties. In such a situation, at least where everyone beneficially interested is in accord, as here, letters of administration should ordinarily be taken out and advertised, and, after lapse of the appropriate six months' period, which, incidentally, in the instant case had not expired at the time of filing the within account, since no estate notice has ever been advertised, the personal representative's account should be filed and audited, and balances awarded by the court, to afford complete protection for all concerned without any necessity whatsoever for filing and auditing a separate guardian's account. Compare the comments of the Joint State Government Commission pertaining to section 631(b), supra. See also Hollowbush Estate, 11 D. & C. 2d 510, 6 Fiduc. Rep. 580; Ayers Estate, 12 D. & C. 2d 478, 7 Fiduc. Rep. 669; Carter Estate, 25 D. & C. 2d 681, 12 Fiduc. Rep. 23; Bernhard Estate, supra.

Because of the elimination from the accounting of the independent trust estate as hereinabove discussed, and the consequently limited size of the remaining net

ascertained balance for distribution of the guardianship estate in the instant case, however, this ordinary practice may be bypassed, not by reason of anything in the Incompetents' Estates Act, but under the provisions of section 202 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.202. The whole of the individual estates of incompetent *as a decedent,* subsisting as of the date of her death, was as shown by the within accounting as hereinabove adjusted, and it amounted to less than $2,500. Therefore, the same may be distributed without the intervention of a personal representative under the express terms of section 202, with complete protection to accountant and the surety on his bond, although, of course, the distributees would run the theoretical risk of having the matter reopened within one year if, in fact, an improper distribution be authorized thereby. See Bliem Estate, 8 Fiduc. Rep. 131, where resort was had to section 202 under similar circumstances.

It is true that, as already hereinabove noted, section 613 of the Incompetents' Estates Act of 1955 in terms would proscribe the allowance of post-death claims (other than administration expenses) at the audit of the account of the guardian of an incompetent. This prohibition is impliedly conditioned or qualified, however, as shown in the very comments of the commission to the identical provisions of section 612 of the predecessor Incompetents' Estates Act of June 28, 1951, P. L. 612, to the extent that such creditors' claims might be recognized and satisfied by awards in section 202 cases, as here: Bliem Estate, supra. The enactment of the respective Incompetents' Estates Acts was manifestly not intended to repeal the salutary scheme of section 202 of the Fiduciaries Act for the settlement of small estates of decedents. Accordingly, in the present case, the auditing judge feels justified in authorizing and, hence, ratifying the "risk" payments by accountant after incompetent's

death for her funeral expenses and the inheritance tax in her estate as part of the section 202 settlement herein made of the funds for which he remains accountable for purposes of distribution. . . .

The account is hereby confirmed, subject to the elimination of the items of the trust estate, as aforesaid, and it is ordered and decreed that Donald E. Hogeland, substituted guardian as aforesaid, shall make and pay the distributions herein awarded forthwith upon the absolute confirmation hereof.

And now, August 22, 1966, the within adjudication is directed to be filed and is hereby confirmed nisi.